| | |
|---|---|
| ELIZABETH WILBURN, | ) |
|     Plaintiff, | ) |
| and | ) |
| THE HARTFORD INSURANCE GROUP, | ) |
|     Intervening Plaintiff, | ) |
| v. | ) Case No. 3:15-cv-691 |
| | ) Judge Aleta A. Trauger |
| UNITED STATES OF AMERICA, | ) |
|     Defendant. | ) |

## MEMORANDUM

Pending before the court is a Motion to Dismiss for Lack of Jurisdiction or, in the Alternative, for Summary Judgment (Docket No. 28), filed by the defendant, the United States of America, to which the plaintiff, Elizabeth Wilburn, has filed a Response in opposition (Docket No. 50), and the United States has filed a Reply (Docket No. 55). For the reasons discussed herein, the motion will be granted.

## BACKGROUND

This personal injury action arises from allegations that the plaintiff was injured by an elevator at the Nashville Campus of the Tennessee Valley Healthcare System, operated by the United States Department of Veterans Affairs (the "VA Hospital"). For the purposes of the pending motion, the following facts recounted herein are undisputed.[1]

---

[1] In her Response to the United States' Statement of Undisputed Material Facts, the plaintiff inexplicably "disputes" some of the background facts recounted herein. (See Docket No. 50-1.) In fact, however, her Response aims only to add additional information that is not relevant to the

1

At the time of the incident giving rise to this action, the plaintiff was an employee of Stericycle Specialty Waste Solutions ("Stericycle"), which is in the business of removing biohazard waste from hospitals. The plaintiff was assigned to remove waste from the VA Hospital, which required transporting a very large cart loaded with waste containers. When traveling from floor to floor with the cart at the VA Hospital, the plaintiff was required to use either of two service elevators. On June 29, 2012, while the plaintiff was working at the VA Hospital, she was pulling her loaded cart onto a service elevator when the doors slammed closed, hitting her in her shoulder and knocking her to the floor, then closing on her cart and, ultimately, going off track.[2] While the plaintiff was able to resume and complete her shift, she sought medical attention within days. Due to the injuries she sustained from the incident, the plaintiff was never able to return to work at Stericycle and began collecting workers' compensation benefits.

On many occasions prior to the June 29, 2012 incident giving rise to this action, the plaintiff experienced the doors of the service elevators closing too quickly for her to safely and easily maneuver her cart inside. On more than one occasion, the elevator doors closed on the cart, trapping the plaintiff inside the elevator and damaging the cart. The plaintiff complained

---

court's analysis. The plaintiff raises no actual objection to these facts, nor does she cite to the record for conflicting information. To the contrary, the record fully supports these facts, which are based on the plaintiff's own testimony and recounted in the plaintiff's own briefing. Despite the formal disputes, the court finds that these are the facts as told in the light most favorable to the plaintiff's position in this action and, thus, are the proper facts for the court to consider for the purposes of the pending motion.

[2] While the plaintiff's theory of the case is that the incident was caused by the timing of the elevator doors, it is undisputed that the plaintiff testified that a VA Hospital employee informed her, shortly after the incident, that it had been caused by a broken spring in the elevator door. The United States has raised an objection to this evidence as inadmissible hearsay, but the court will consider it for the limited purposes of this motion, as it does not anyway provide grounds for the plaintiff's claim to survive.

2

many times about this issue with the elevator doors to Sean Stevens, Assistant Chief of Environmental Management Services ("EVS") at the VA Hospital and also to Leon Langguth, Chief of EVS. The plaintiff also made at least five written complaints to the VA Hospital to report incidents where she was trapped inside the elevator and/or her cart was damaged by the elevator doors closing too quickly. Upon receiving the plaintiff's final written complaint prior to the incident, Mr. Langguth acknowledged the plaintiff's concerns but stated that there was not enough money to do anything about it. Other service workers at the VA Hospital also experienced similar problems with the service elevators.[3]

At all relevant times, the VA Hospital contracted with Otis Elevator Company ("Otis") to provide regular maintenance and service for all elevators, including the service elevators that the plaintiff used for her job. The contract between the VA Hospital and Otis required Otis to perform monthly preventative maintenance, semi-annual inspections, and any necessary repairs or modifications to keep the elevators in compliance with all applicable safety codes and regulations. Otis was specifically tasked with ensuring that the speed of the service elevator doors was in compliance with the codes established by the American Society of Mechanical Engineers ("ASME"). The VA Hospital also contracted at all relevant times with Bayline Lift Technologies ("Bayline") to provide biannual elevator inspections and five-year tests to ensure that the elevators, including the service elevators, complied with the American National Standard Safety Code for elevators, including, again, that the door speed was in compliance with ASME

---

[3] While it is factually disputed, there is some evidence in the record that other workers at the VA Hospital also complained to EVS about the timing of the closing of the service elevator doors because they, too, had difficulty loading carts onto the service elevator. The plaintiff has testified in deposition that she is aware of an incident where a laundry worker at the VA Hospital experienced the service doors closing on his hands while he was loading his cart onto the elevator, causing him to lose the tip of at least one finger. Although disputed, the court will consider these facts as true for the purpose of the pending motion.

3

regulations. Records reflect that inspections, testing, and maintenance of the service elevators at the VA Hospital were conducted by Otis and Bayline as required by applicable regulations and by their contracts with the VA Hospital. The elevator doors passed all safety and performance checks before and after the incident in which the plaintiff was injured, including that the timing for the closing of the doors complied with all regulations. While the timing of the service elevator doors at all times complied with the applicable codes and regulations, the timing could have been changed so that the elevator doors closed more slowly, and still have been in compliance. If Otis had received such a request from the VA Hospital, they could have modified the service elevators in this way.[4]

## PROCEDURAL HISTORY

The plaintiff filed a negligence suit against the United States on June 22, 2015, pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq*. (the "FTCA"). (Docket No. 1.)

On July 28, 2015, the court granted a Motion to Intervene by Hartford Insurance Group ("Hartford"), pursuant to Tenn. R. Civ. P. 24.01. Hartford insures Stericyle for workers' compensation benefits and had already paid (and may still be continuing to pay) benefits to the plaintiff; accordingly, it is entitled to a subrogation lien against any recovery in this action under Tenn. Code Ann. § 50-6-112.

On April 26, 2017, the United States filed a Motion to Dismiss for Lack of Jurisdiction or, in the Alternative, for Summary Judgment (Docket No. 28), along with several supporting affidavits (Docket Nos. 30-32) and a Statement of Undisputed Material Facts (Docket No. 33).

---

[4] The United States attempts to dispute this fact by noting that no such request was ever made. (Docket No. 54 ¶ 15.) But the United States concedes that there is evidence in the record that, hypothetically, Otis could have made this modification, which is the only assertion that the plaintiff has put forth. It is undisputed that no such request was ever made and that the doors, nevertheless, remained in compliance with the applicable codes and regulations at all relevant times.

The following day, the United States filed a Memorandum in support, along with attached exhibits. (Docket No. 35.) The United States primarily argues that jurisdiction is not appropriate with respect to the negligence claim against it because the discretionary function exception (the "DFE") to the FTCA applies and precludes the exercise of jurisdiction. Alternatively, the United States argues that the independent contractor exception (the "ICE") to the FTCA applies and blocks jurisdiction. Finally, the United States argues that, if the jurisdictional arguments are unsuccessful, the court should consider its untimely requests to dismiss this action under Rule 12(b)(6) for failure to state a claim or under Rule 56 for summary judgment.

On June 5, 2017, the plaintiff filed a Response in opposition to the United States' Motion, attaching a Response to the United States' Statement of Undisputed Material Facts, the plaintiff's own Statement of Undisputed Facts, and a Declaration of the plaintiff.[5] (Docket No. 50.) The following day, the plaintiff filed a Memorandum in support of her Response. (Docket No. 51.)

On June 19, 2017, the United States filed a Reply (Docket No. 55), along with a Reply to the plaintiff's Response to the United States' Statement of Undisputed Material Facts (Docket No. 53), and a Response to the plaintiff's Statement of Undisputed Material Facts (Docket No. 54).

## **ANALYSIS**

While the United States raises several alternative grounds for dismissal of this action, the court will reach only the United States' argument under Rule 12(b)(1) for lack of subject matter

---

[5] The United States argues that the court should not consider this Declaration, citing the "sham affidavit doctrine," which prohibits a non-moving party from filing an affidavit after a motion for summary judgment is already pending that could create a triable issue of fact where the record does not otherwise support one. The United States, however, admits the veracity of the statements contained in the plaintiff's Declaration for the limited purpose of the pending motion. (*See* Docket No. 54.) For the reasons discussed herein, even if all facts asserted in the plaintiff's Declaration are true, as recounted above, this action still cannot survive.

5

jurisdiction. Because the action will be dismissed on that ground, for the reasons discussed more fully below, the court need not reach the question of whether the untimely motions under Rule 12(b)(6) and Rule 56 are properly before the court. Before turning to the discussion of the Rule 12(b)(1) motion for lack of jurisdiction, the court notes that such a motion can be brought at any time. Rule 12(h)(3); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)). Finally, in this instance, the United States has raised a facial attack under Rule 12(b)(1), rather than a factual attack; although the record has been developed beyond the pleadings stage and there are factual disputes, the United States' argument rests on the premise that, even based on the facts that are undisputed for the purposes of this motion (and are consistent with the allegations in the Complaint and the plaintiff's theory of the case), the claim still cannot survive for lack of jurisdiction. For this reason, the court has recounted the facts above in the light most favorable to the plaintiff and will assume these facts are correct for purposes of this analysis.

### I.  Legal Standard for 12(b)(1) Motion to Dismiss for Lack of Jurisdiction

"Rule 12(b)(1) motions to dismiss . . . generally come in two varieties: a facial attack or a factual attack." *Genetek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). If a Rule 12(b)(1) motion challenges subject matter jurisdiction based on the face of the complaint, the plaintiff must demonstrate that the complaint alleges a "substantial" federal claim, meaning that prior decisions do not inescapably render the claim frivolous. *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). A court evaluating this sort of facial attack to the assertion of subject matter jurisdiction must consider the allegations of fact in the complaint to be true. *Genetek*, 491 F.3d at 330; *Jones v. City of Lakeland*, 175 F.3d 410, 413 (6th Cir. 1999). Thus, "the plaintiff can survive the motion by showing any arguable basis in law

6

for the claim made." *Musson Theatrical*, 89 F.3d at 1248. When reviewing factual evidence in considering a Rule 12(b)(1) motion, the court should be guided by the standards of Rule 56 and concern itself primarily with fairness to the non-moving party. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 327 (6th Cir. 1990).

## II. Jurisdiction Over the Plaintiff's Claim

The United States is generally immune from suit for monetary damages. *See Reed v. Reno*, 146 F.3d 392, 397-98 (6th Cir. 1998). The FTCA, however, provides a waiver of sovereign immunity that allows the United States to be sued "in the same manner and to the same extent as a private individual under like circumstances" for a tort claim arising from the acts of federal employees acting within the scope of their employment. 28 U.S.C. § 2674; *see also* 28 USC §1346(b)(1) (providing that federal courts have exclusive jurisdiction over claims for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."); *Young v. United States*, 71 F.3d 1238, 1241 (6th Cir. 1995). In order for jurisdiction under the FTCA to be proper in this action, however, the court must determine that none of the exceptions to the FTCA's waiver of sovereign immunity applies. *See Himmelreich v. Federal Bureau of Prisons*, 766 F.3d 576, 580 (6th Cir. 2014) (citing *Kohl v. United States*, 699 F.3d 935, 939-40 (6th Cir. 2012) and *Milligan v. United States*, 670 F.3d 686, 695 (6th Cir. 2012)) (aff'd *Simmons v. Himmelreich*, 136 S.Ct. 1843, 1847-48 (2016)).

The United States has argued that two exceptions to the FTCA apply here. The first is the ICE, which is an exception that is built into the basic statutory language of the FTCA waiver

7

of immunity that is quoted above. Because the FTCA waives the United States' immunity only for claims that are based on the acts of United States *employees*, no such waiver is extended to claims against the United States that arise from the actions of an *independent contractor*. See *U.S. v. Orleans*, 425 US 807 (1976). The United States argues that, to the extent the incident giving rise to this action was caused by the alleged acts or omissions of Otis or Bayline in maintaining, servicing, testing, or inspecting the service elevators at the VA Hospital, the ICE applies to protect the United States from suit because it delegated these tasks to the independent contractors.

The second exception to the FTCA raised by the United States is the DFE, which is expressly enumerated in the text of the FTCA as an exception to the waiver of sovereign immunity as follows:

> The provisions of this chapter and section 1346(b) of this title shall not apply to . . . Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused. . . .

28 USC § 2680(a). The DFE overrules the FTCA's waiver of immunity just as if the FTCA did not apply in the first place, and the government remains immune from suit where this exception applies. *Himmelreich*, 766 F.3d at 580. ("[W]e lack jurisdiction over an FTCA claim if the discretionary-function exception applies in a given case."). The United States argues that the DFE applies both to its decision to delegate the regular maintenance and service of the elevators to Otis and Bayline as well as to any independent decisions about the elevators made by the VA Hospital that were not governed by regulation.

8

The plaintiff's theory of the case is that her injury was not caused by any acts or omissions of Bayline or Otis. Indeed the plaintiff concedes that Otis and Bayline adequately ensured that the service elevators at the VA Hospital complied with all applicable safety regulations.[6] Rather, the plaintiff's claim is premised on the allegation that the United States was negligent in its refusal to alter the timing of the door closure on the service elevators, despite the plaintiff's having placed the VA Hospital on notice that she needed the doors on the service elevators to remain open longer or close more slowly in order for her to safely carry out her job. The plaintiff argues that her claim should proceed because the VA Hospital "had an operational duty in the conduct of the elevator maintenance program to correct any unsafe condition which may thereafter arise."[7] (Docket No. 51, p. 2.) For the reasons discussed below, the court finds that the DFE clearly protects the United States from suit for any actions or omissions related to the timing of the elevator doors.

In determining whether the DFE applies, the court must apply a two-part test. *United States v. Gaubert*, 499 U.S. 315 (1991). First, in order for the DFE to apply, the court must find that the government employee's actions giving rise to the claim were the subject of a discretionary choice, meaning the actions were not governed by a statute, regulation, or internal policy with which the employee failed to comply (in which case, the DFE would not apply and jurisdiction under the FTCA could proceed). *Id. at 322-323*. Second, the discretionary decision must be of the type the DFE was intended to protect. *Id*. Notably, the *Gaubert* court held that "[d]iscretionary conduct is not confined to the policy or planning level," but includes decisions about day-to-day operations that are made in the course of carrying out a responsibility that the

---

[6] In fact, it is for this reason that the plaintiff argues that the ICE does not apply.

[7] The plaintiff goes on to say that "[t]he maintenance program was created in the exercise of a discretionary function," which appears itself to be a concession to the applicability of the DFE.

9

employee has been authorized to hold. *Id*. at 325. In fact, *Gaubert* expressly rejects the argument that the DFE protects "only those acts of negligence which occur in the course of establishing broad policies, rather than individual acts of negligence which occur in the course of day-to-day activities." *Id*. at 334. In determining whether the second part of the test is met, the Sixth Circuit has explained that this is about "drawing a distinction between torts committed in the course of such routine activities as the operation of a motor vehicle and those associated with activities of a more obviously governmental nature." *Totten v. United States*, 806 F.2d 698, 700 (6th Cir. 1986). Finally, the Sixth Circuit has held that "[t]here is a strong presumption that the second part of this *Gaubert* test is satisfied if the court concludes that the employee was exercising discretion." *A.O. Smith Corp. v. United States*, 774 F.3d 359, 365 (6th Cir. 2014).

The DFE plainly applies to the decision of the VA Hospital not to change the timing on the elevator doors. The first part of the *Gaubert* test is met because there is no evidence that this decision was governed by any statute, regulation, or internal policy. To the contrary, the undisputed evidence shows that all applicable policies and regulations regarding the timing of the elevator doors were complied with. It was, then, squarely within the discretion of the VA Hospital whether to slow the doors beyond the timing mandated by regulation to accommodate the plaintiff (and perhaps other service workers). Further, the VA Hospital's decision not to do so meets the second part of the *Gaubert* test, as it is clearly a decision of a governmental nature and not the type of decision that is akin to operating a motor vehicle. It is a decision that is informed by policy considerations. Indeed, the plaintiff's own assertion that Langguth declined to change the timing of the elevator doors due to associated costs demonstrates the nature of the policy considerations connected with this decision. Moreover, the Sixth Circuit has expressly rejected the proposition that meeting the second part of the *Gaubert* test requires evidence of a

10

"reasoned policy decision." *Rosebush v. United States*, 119 F.3d 438, 443 (6th Cir. 1997). To the contrary, the Sixth Circuit held in *Rosebush* as follows:

> Thus, the requirement of a policy nexus is an objective not a subjective one. The proper inquiry is whether the challenged actions are susceptible to policy analysis, not whether they were the result of policy analysis. . . . [E]ven if there is no evidence that policy concerns were the basis of a challenged decision, the discretionary function exception applies if the decision is susceptible to policy analysis.

Id. at 444 (citing *Myslakowski v. United States*, 806 F.2d 94, 97 (6th Cir. 1986)). Accordingly, even if Langguth did not actually take these policy objectives into consideration and the decision not to change the timing of the elevator doors was not a reasoned one, the DFE still applies because subjectively, the decision is one that is susceptible to policy analysis.

The plaintiff's argument that the DFE should not apply because the United States was on notice of the dangerous condition and had a duty to correct it speaks only to the question of whether the VA Hospital was negligent. That is not the question before the court at this juncture. Rather, the question before the court as it considers whether jurisdiction is appropriate is solely whether the VA Hospital and its agents were acting within their discretionary functions in carrying out the actions underlying the claim; to the extent they were, the DFE to the FTCA applies and there is no FTCA waiver of immunity. Even if the VA Hospital was aware that the condition of the elevator doors was unsafe for service employees and had led to other safety incidents involving the plaintiff and others, absent any statutory or regulatory mandate to change the timing of the elevator doors, the decision not to do so fell within the VA Hospital's discretion.[8] Under the FTCA, then, even if this decision might be negligent, the court still lacks

---

[8] The plaintiff cites to two cases for the argument that the DFE exception should not apply but both are readily distinguishable. *See Indian Towing Co. v. United States*, 350 U.S. 61 (1995) (the DFE did not apply where the government agency let a lighthouse light go out because there was no discretion in its duty to keep the light on); *Mays v. Tennessee Valley Auth.*, 699 F. Supp.

11

jurisdiction.[9]  Thus, the claim cannot proceed to a determination on the merits as to whether the VA Hospital was, in fact, negligent.

Finally, with respect to any plausible theory of the case that arises from a malfunction of the VA Hospital service elevators, separate and apart from the VA Hospital's decision not to slow the timing of the doors, the exceptions to the FTCA still apply to preclude jurisdiction over this action.[10]  First, the DFE still applies with respect to the United States' decision to delegate the maintenance and service of the elevators, as well as its decisions regarding how it oversaw this maintenance to ensure it was being done correctly.  There is clear precedent establishing that a government agency's decision to delegate safety compliance issues to an outside contractor, and then to spot check rather than oversee all aspects of the contractor's work, falls within the discretionary decisions covered by the DFE.  And, so long as the United States followed its own protocol, it cannot be sued for any acts of negligence that it failed to catch.  *United States v. S.A. Empresa do Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984); *Totten*, 806 F.2d at 700.

---

2d 991 (Tenn. E.D. 2010) (finding that the DFE did not apply because the agency failed to comply with its own internal policies).

[9] The court is sympathetic to the fact that the plaintiff has put forward a strong negligence claim against the VA Hospital, given evidence that it was on notice for quite some time that the timing of the service elevator doors created a highly dangerous condition for its workers and had already resulted in incidents including workers being trapped inside the elevators, carts being damaged, and other injuries.  However, the court cannot allow this negligence claim to proceed where jurisdiction over the United States is not proper.  And, under existing precedent, the court finds that the United States is protected from suit for this type of negligence claim that is based on its exercise of discretionary governmental authority, rather than non-compliance with an established regulation or policy.

[10] There is some limited evidence in the record that the incident causing the plaintiff's injury may have been caused by a broken spring in the elevator door, though the plaintiff does not rely on this theory of the case in her briefing, nor is there any evidence in the record that a broken spring was the result of negligence by Otis or Bayline, let alone negligence of the VA Hospital in overseeing their work.

12

There are no allegations that the United States was put on notice of any faulty maintenance issues that it failed to correct, or any evidence that the VA Hospital did not comply with its own internal regulations regarding checking the work done by independent contractors Otis and Bayline.[11] The DFE thus protects the United States from suit for any injuries arising from the general maintenance of the elevators, which the VA Hospital delegated to Otis and Bayline. Finally, The ICE applies to protect the United States from any acts or omissions in the conduct of Bayline or Otis that may have caused a problem with the elevator doors giving rise to the plaintiff's injury, outside of the timing issue.

For these reasons, the DFE and ICE exceptions to the exercise of jurisdiction under the FTCA apply to any theory of liability in this matter, and the court does not have jurisdiction over the plaintiff's claim.

## **CONCLUSION**

For the foregoing reasons, the Motion to Dismiss will be granted and this action will be dismissed with prejudice.

An appropriate Order will enter.

                                                ALETA A. TRAUGER
                                                United States District Judge

---

[11] Indeed, the only evidence in the record about notice to the VA Hospital of concerns with the elevators is notice that the plaintiff and other service workers may have had concerns about the door timing, despite its compliance with regulations, for which the United States is protected by the DFE as discussed above.